## J. E. POPE v. THE STATE.

No. 2133. Decided April 30, 1913.

Rehearing denied June 25, 1913.

**1.—Embezzlement—Sufficiency of the Evidence—Sale—Consignment.**

Where, upon trial of embezzlement, the issue was sharply contested as to whether the goods were sold to defendant on a credit, or were placed with him on consignment, and the court fairly submitted that issue to the jury, who found against him, there was no reversible error.

**2.—Same—Husband and Wife—Consignee.**

Where the trade was with the defendant, and it was understood by him and the consignor that the name of defendant's wife would be used to keep

creditors from interfering, but the goods were delivered to him and not to his wife, he was the consignee in law.

### 3.—Same—Evidence—Compromise.

Upon trial of embezzlement, the court did not err in excluding evidence of offers to compromise after the embezzlement had taken place and the prosecution begun.

### 4.—Some—Charge of Court—Definition of Consignee.

Where, upon trial of embezzlement, the State's testimony showed that the defendant held the alleged embezzled goods as consignee, there was no error in the court's failure to give a definition of the word, "consignee," in the absence of requested instructions; the court properly submitting the law applicable to the case.

### 5.—Same—Rehearing— Stating Facts in Opinion.

Where appellant in his motion for rehearing insisted that the appellate court had not correctly stated the facts upon which it based its conclusion, to the effect that the State's evidence showed that the defendant held the alleged embezzled goods on consignment, but the record showed that this court was correct in stating the facts upon which it based its conclusion, and that appellant's attorney was in error, there was no reversible error.

### 6.—Same—Evidence—Compounding Crime—Compromise.

Upon trial of embezzlement, there was no error in excluding testimony that after the arrest of the defendant, the consignors had made tentative propositions of compromise; even if they had gone so far as to compound the crime under article 422, Penal Code, and rendered themselves liable to criminal prosecution, this would be no justification for defendant in committing the crime of embezzlement, and such testimony was inadmissible for any purpose.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Barry Miller.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Puckett Williams* and *F. J. McCord,* for appellant.—On question of fraudulent intent: Mortimore v. State, 60 Texas Crim. Rep., 69; Eilers v. State, 34 id., 344; Stallings v. State, 29 Texas Crim. App., 220; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 id., 12.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at two years confinement in the penitentiary.

Appellant at one time was a member of the Wendell-Pope Jewelry Company, which firm was indebted to Shuttles Brothers & Lewis of Dallas, Texas. The Wendell-Pope Company failed, and bankruptcy proceedings were had. A conversation took place between appellant and a member of the Shuttles firm on their way to attend a creditors' meeting, and at this time it was agreed that Mr. Pope would continue in business in Dallas, doing business in his wife's (M. E. Pope's) name. The terms of this agreement is one of the main questions at issue in this case. Appellant contends they were to extend him a line of credit.

Shuttles Brothers & Lewis contend they were to let him have goods on consignment—the title remaining in them. It would appear that appellant secured a $10,000 stock of goods from Shuttles and engaged in business. W. W. Guy worked for appellant, and he testified: "In the month of May this year I was employed by Mr. Pope as stenographer. I have been with them from January 12th to the 11th of May. Up until the time he went away, yes, sir. I did not know where he was going when he left. I did not know that he was going to discontinue business. The last month that I worked for him, my duties were collecting. Prior to that time I worked at the bench and on watch repairing.

"He told me that Shuttles Brothers & Lewis owned the goods in his place, and besides he would send me down there for them and send me down to have them checked up. He sent me down there once a month. He told me to check up on the 27th of each month. He did not send me every time, he and the bookkeeper went part of the time.

"When he would sell goods there in that establishment the notes would be turned over to Shuttles Brothers & Lewis. Part of the time he would turn them over the same day that the sale was made. The rule about the office was that the goods were sold on the installment plan, and that the notes were turned over to Shuttles Brothers & Lewis to have them approved. He told me that the notes had to be approved before the sale was completed. Mr. Pope told me that."

While the issue was sharply contested as to whether the goods were sold to appellant on a credit, or were placed with him on consignment, the court fairly submitted that issue to the jury, and they found against appellant's contention, and we can not say they were not justified in so doing, and in our opinion the evidence will sustain the verdict. The contention that appellant's wife, M. E. Pope, was the consignee, if the goods were placed on consignment, can not be sustained. The trade was with appellant, and it was understood by him and Shuttles Brothers & Lewis that the name of the wife of appellant would be used to keep creditors from interfering, and the goods were delivered to him, not to Mrs. Pope.

It appears from the testimony that on Saturday, May 11th, appellant's stock was checked by a representative of the Shuttles firm, and at that time he was asked in regard to a certain diamond of the value of about $500. The State's evidence would show that he then stated he had placed it with a certain man for sale, and agreed to bring it in Monday. Instead of doing so he left for St. Louis, where he was arrested, having this diamond with him. Appellant desired to introduce testimony that the Shuttles firm agreed not to prosecute him if he would pay them a certain amount of money, which they claimed was owing them. This all occurred subsequent to the arrest of appellant, and would not throw any light on whether the goods were sold to appellant or he had them on consignment. The offense, if one had been committed, could not be compromised by the Shuttles firm. Appellant was

being prosecuted, charged with the embezzlement of one specific diamond, and evidence of a matter taking place subsequent would not be admissible, unless it would tend to throw light on whether or not this diamond had been sold to appellant, on credit, or it had been delivered to him as the agent of the Shuttles. Therefore, the court did not err in excluding the evidence of offers of compromise after the embezzlement had taken place and prosecution commenced.

It appears that the Shuttles firm had taken possession of about $10,000 worth of goods on May 11th, and appellant had agreed to deliver the diamond, which he is being prosecuted for embezzling, on Monday, May 13th. This he did not do. The sole question in this case is, whether this particular diamond was held by appellant as agent of the Shuttles firm, or had been purchased by him, and none of the testimony offered, and which was excluded by the court, would tend to prove or disprove that fact.

In the absence of requested instructions, it was not incumbent on the court to give a definition of the word "consignee." It has a well understood meaning. The court instructed the jury: "Four things are essentially requisite to constitute the offense of embezzlement:

"1. The defendant's agency whereby he was charged with the duty of receiving the property. 2. The receipt of the property. 3. Its receipt by virtue of his agency. 4. The fraudulent conversion or misapplication of the property by him.

"If either of these requisites is wanting in a prosecution for embezzlement, then the prosecution has failed to establish that crime, and the defendant would be entitled to an acquittal." . . .

"If you have a reasonable doubt or if you believe that the property described in the indictment came into the possession of defendant as a sale on credit, then you will acquit the defendant. If you believe or have a reasonable doubt that Prescott, for Shuttles Brothers & Lewis, agreed to sell goods on credit to defendant in consideration of his agreeing to pay the debt formerly owed Shuttles Brothers & Lewis by the Wendell-Pope Jewelry Company, and that the property described in this indictment was sold to defendant under this agreement, you will acquit the defendant."

This presented affirmatively defendant's theory of the case, and the charge as a whole was a fair presentation of the law applicable to the evidence.

It may be said that the issues of fact were sharply contested, but the evidence offered in behalf of the State would show a plain case of embezzlement, and the jury finds this evidence to be true. No error is pointed out in the record, and the judgment is affirmed.

                                                    *Affirmed.*

HARPER, JUDGE.—Appellant has filed a motion for rehearing in this case in which he strenuously insists that we erred in two conclusions reached. He does not insist that we erred in any proposition of law stated, but seems to admit that if the facts justified the conclusions reached, then the law was properly applied.

His first insistence is that the particular diamond for which he is being prosecuted for embezzling did not come into his hands under the M. E. Pope agreement, but came into his hands while he was doing business at Longview under the firm name of Wendell Jewelry, or Wendell-Pope Jewelry Company. As it is a question of fact that appellant insists we are wrong in, there is but one way to arrive at a correct conclusion, and that is to go to the evidence adduced on the trial. We will refer to the testimony relating to this particular diamond and see whether or not the evidence offered in behalf of the State would authorize the jury to find that he held the goods as agent for Shuttles Brothers & Lewis, instead of buying them outright as claimed by him. There is no contest in the case as to the fact that Shuttles Brothers & Lewis were originally the owners of the diamond, and that they had never been paid for it, but appellant insists that the diamond was purchased on a credit, and that the debt was discharged by bankruptcy proceedings. If Mr. Prescott, the treasurer of the corporation, is to be given any credence, he testified that in May, 1911, the diamond was placed with appellant for sale; in August he sold it to Mr. Mabry of Hunt County for $650, $100 in cash, and contract for $550; it was a conditional sale, the title not passing to Mabry until the purchase price was fully paid. Under law this was a mortgage. When appellant made this trade with Mabry he transferred by indorsement, the contract of Mabry to Shuttles Brothers & Lewis; and they were the legal owners and holders thereof, at the time of the bankruptcy proceedings of appellant and his father-in-law. It is true that this bankruptcy proceeding, although the claim was not listed, would release appellant as indorser on the Mabry contract, but it would in no sense make appellant the owner of the diamond. Mabry then had the diamond and Shuttles Brothers & Lewis the conditional sale or mortgage contract. Subsequent to this time Mabry decided he could not pay for the diamond, and appellant so reported to Shuttles Brothers & Lewis, and they canceled and surrendered the conditional sale or mortgage contract in consideration of Mabry surrendering the diamond. At this time appellant had no interest in the diamond nor in the mortgage, and the diamond by this transaction became the property of Shuttles Brothers & Lewis, under the well known rules of law, and the bankruptcy proceedings became an immaterial matter in deciding whether or not the diamond was in fact embezzled by appellant. If he was the agent, as the facts clearly show, of Shuttles Brothers & Lewis in securing the return of

the diamond in consideration of the cancellation of the mortgage contract, the fact that Mabry delivered the diamond to him would not make him the owner, and if, when he reported the transaction to Shuttles Brothers & Lewis, they left the diamond with him, as to whether or not he was guilty of embezzlement would depend wholly on the transaction that took place at this time. If they then resold the diamond at an agreed price to appellant, he would not be guilty of embezzlement, but there is no contention that this is true; all the evidence shows that the diamond was left in his possession on the terms and conditions of the M. E. Pope contract; this, they say, was a consignment contract, and the title to the goods always remained in them. He says they sold M. E. Pope goods on a credit. The evidence clearly shows he received from them some $12,000 worth of jewelry, either on consignment or by purchase on credit. This was the issue to be tried, and was fairly submitted to the jury for their determination as shown in the original opinion, and in a way not complained of in this motion. A. S. Prescott and R. H. Shuttles testify that the goods were not sold to appellant, but were placed with him on consignment; the evidence clearly shows that they frequently checked his stock and required an accounting for the goods not in stock; two of appellant's clerks, T. H. Andrews and W. W. Guy, testify that appellant admitted to them the goods were the property of Shuttles Brothers & Lewis, Guy's testimony being copied in the original opinion. It is further in evidence that when a check given by appellant to Shuttles Brothers & Lewis was turned down by the bank on May 11th that their business relations were severed, and all the goods of Shuttles Brothers & Lewis, on hand, were delivered by appellant to them without question except this diamond; that in checking the goods the diamond which appellant is being prosecuted for was missing. Messrs. Prescott and Shuttles testify that appellant then asserted no claim to the diamond, but said he had delivered the diamond to M. M. Cherry to sell to his father-in-law, Mr. Morgan. Mr. Cherry says this is untrue. They further testify that appellant agreed to secure the diamond and return it to them on Monday morning. Instead of doing so, he left the State on Sunday night and was arrested in St. Louis on Wednesday, he then having the diamond in his possession. He was brought back to Texas by a detective, Joe Austin. He admits that when brought to Dallas he concealed the diamond before getting off the train, and being placed in jail. From that day until the day of the trial, the diamond disappeared from view, but while testifying he says he has always known where the diamond was, and on the trial secured and displayed it, but would not surrender it. These facts would support the finding of the jury that he was but the agent of Shuttles Brothers & Lewis in handling this diamond, and by his acts and conduct was guilty of embezzling it. Of course, the testimony of defendant would support a finding that there was a sale on credit to him, but the jury did not accept his theory of the case, but found the facts to be as testified to by the State's witnesses.

The attorney, Hon. Felix J. McCord, who files this motion for a rehearing, was not an attorney on the trial of the case, and perhaps he is, for that reason, excusable for the broad incorrect statement of the evidence in the motion for a rehearing. · He must have relied on some person's statement to him, for certainly the record in this case on file in this court would not authorize nor justify such a statement of facts as he contends for in the motion filed.   Even if we should view the facts from the testimony introduced by appellant alone, the facts, as stated in the motion would have no foundation nor justification in the record. But, of course, in passing on the sufficiency of the testimony to sustain a verdict, we do not and would not be warranted in law to consider the testimony of the appellant alone, but we must look to the whole record, and if the testimony as a whole will sustain the verdict, we have no legal right to disturb it.

The only other ground in appellant's motion is that he should have been permitted to introduce testimony tending to show that after his arrest and incarceration in jail charged with this offense, that Mr. Prescott and Mr. Shuttles made tentative propositions that if their losses were made good they would not push this prosecution.   The court, in the cross-examination of Prescott and Shuttles, allowed the broadest range; it was shown they employed Mr. Allen to prosecute the case; the amount of their loss, their feelings towards appellant, and all facts that would tend to show their interest, bias, etc., for the purpose of affecting their credit as witnesses.   But if they had gone so far as to compound a crime, under article 422, Penal Code, and thus render themselves liable to a criminal prosecution, this would be no excuse nor justification of the crime of embezzlement if appellant had theretofore committed that offense.   Nor would such fact throw any light on the original transaction between appellant and Shuttles Brothers & Lewis.   It was this fact on trial, was appellant in charge of the diamond as agent in law of Shuttles Brothers & Lewis, were the goods delivered to him on consignment, the title remaining in Shuttles Brothers & Lewis, or did he purchase the diamond from them on credit?   As before stated, if they had agreed not to prosecute if all their losses were made good, and that fact proven, this would not render appellant less guilty, nor aid the jury in determining whether or not the diamond was or was not originally sold to him.

On account of the incorrect statement of the testimony in the motion for rehearing, we have deemed it necessary to state the evidence rather at length, and in doing so, we are more fully convinced the original opinion was correct.

The motion for rehearing is overruled.             .

*Overruled.*