**Bertram ROSE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40991.**

Court of Criminal Appeals of Texas.

Feb. 28, 1968.

Rehearing Denied May 29, 1968.

Weldon Holcomb, Rex Kirby, Tyler, for appellant.

Hunter B. Brush, Milton Greer Mell, Asst. Dist. Atty., Tyler, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is felony theft; the punishment, five years.

Appellant's first and principal ground of error is that the court denied his request to inspect a document in the possession of a witness. During the testimony of Bryan Thompson, director of personnel at the plant from which the property was stolen, appellant's counsel stated, "We object to the reading of notes, etc. while he is testifying." On the next page, counsel again stated, "Your Honor, we object to the reading of this material unless we have a chance to look at them, etc., and see what they, are.". The Court replied, "I don't know what you are talking about." Appellant's counsel replied, "I don't either, Your Honor." The Court then directed this question at the witness, "Are you referring to notes to refresh your memory?", and the witness replied, "This is a sequence of events to refresh my memory."

This answer is as much as appellant was able to prove to establish his contention because the Court agreed that if the witness *used* it to testify from, appellant's counsel would be entitled to see it, and the State ·agreed that if it became necessary to refer to any portion of the six page instrument, such portion would be made available.

At this juncture the Court asked to see the instrument and State's counsel asked Thompson if he had read or used the legal size six page photostatic copy in any manner since he took the witness stand, and the witness replied that he had not. The jury then returned to the courtroom and certain testimony was developed without mentioning the instrument. The jury was again retired, and appellant's counsel again sought permission to inspect the instrument on the grounds this time that State's counsel was using a copy of the same instrument in the possession of the witness Thompson in the course of his interrogation of the witness.

At this juncture State's counsel agreed to allow appellant's counsel to inspect the notes from which he was asking questions, · but objected to his examining the work

product of the District Attorney's office, and explained to the court that the instrument in question contained no signed statements of any witness, but was his résumé of all the facts he intended to prove in the proper sequence which he had learned from talking to the witnesses. How the copy of the same got into Thompson's possession is not shown, but we are here concerned only with the question of whether Thompson used the same while on the witness stand, or whether it was *"exhibited or read from or used to question the witness in the jury's presence."* Sewell v. State, Tex. Cr.App., 367 S.W.2d 349, 351.

In this connection we observe that no question was propounded to the witness in which the instrument was mentioned other than to solve the issue here before us.

But there is more. After each counsel had made his position clear to the court, the court then addressed this question to the witness, "and I ask you again, Mr. Thompson, if you had at any time since you have been on this witness stand, referred to those pages to refresh your memory or have you used them in any way?" The witness stated that he had not, and explained, "I merely brought them up here in case somebody asked me a question I could not answer as to date or time, to refresh my memory as to that date or time."

■ The trial court ordered the instrument sealed in an envelope and sent to this Court. An examination thereof shows it to be just what the State's counsel said it was. It is a narrative account of the chronological development of the case then being tried. It attributes no statement to any witness except the accused and was truly the work product of the District Attorney's office, signed by no one. I join my Brother Onion in condemning the practice of a prosecutor permitting his witnesses to refresh their memories from his personally prepared narrative account of the case, but the Court has concluded that in this case reversible error has not been shown.

■ Clearly the italicized quote from Sewell v. State, supra, shown above must necessarily mean that the prosecution must let the witness know that he is referring to the instrument when questioning him.

His second ground of error is akin to the first in that he complains that he was not permitted to examine the copy in the possession of the prosecutor. As shown above, the prosecutor offered to show him the yellow sheet he was using to question the witness, but declined to exhibit the work product of his office.

■ His third ground of error, not supported by authority, is that the indictment charged him with two separate and distinct felonies. Such is not the case. The indictment in the first paragraph charged the appellant with embezzlement and the second count related the same transaction, but denounced the same as theft. An indictment may contain as many counts charging the same transaction as is thought necessary to meet the emergencies under the testimony, that is, to meet the proof as it transpires and prevent a variance. Article 21.24, Vernon's Ann.C.C.P.; Vannerson v. State, Tex.Cr.App., 408 S.W.2d 228.

■ Appellant's fourth ground of error, not supported by authority, is that the evidence shows embezzlement but not theft, which was the offense submitted to the jury in the court's charge. The record is clear that during the afternoon preceding the day when the property was taken, appellant had been relieved of his position of foreman in charge of the compressor repair department, and Doyle Yancey had taken his place, so when the property was taken, the same was not in his custody so as to make the taking embezzlement instead of theft. See Grice v. State, 88 Tex.Cr.R. 106, 225 S.W. 172; Watkins v. State, 84 Tex.Cr.R. 412, 207 S.W. 926; and Fellers v. State, 138 Tex.Cr.R. 307, 136 S.W.2d 217.

Finding no reversible error, the judgment is affirmed.

DICE, Judge (concurring).

I fully concur in the result reached in this case, but wish to state that this court should not condemn the prosecutor for the manner in which he prepared the case for trial. To the contrary, he should be commended.

This court should not discourage attorneys, either for the state or the defendant, in the efficient preparation of their cases for trial.

WOODLEY, P. J., and BELCHER, J., join in this concurrence.

ONION, Judge (concurring).

I reluctantly concur in the result reached for I cannot conclude that appellant has brought himself within either one of the two rules set forth and distinguished in Sewell v. State, Tex.Cr.App., 367 S.W.2d 349.

While the witness Thompson acknowledged that he had refreshed his memory from a copy of the instrument in question at his office on the morning of the trial, and that he brought such copy to court with him, the record does not support appellant's claim that it was used or exhibited before the jury by the witness, or that the prosecutor made use of the original or another copy of such instrument in his interrogation of the witness before the jury.[1]

The "use before the jury" rule has always been applied literally, and before the rule comes into play the writing or object must be actually used in the jury's presence.[2]

Under such rule, however, reversal will result without any showing of injury upon the defendant's timely request for inspection of *any* document, instrument or statement, which has been used before the jury by which its content becomes an issue. It is clear that if used before the jury, the document, statement, etc., is obtainable regardless of whether it has been made by the witness or not.

The so-called "Gaskin rule" is limited to a previous statement *made by the witness* testifying for the State. Artell v. State, Tex.Cr.App., 372 S.W.2d 944. "The rule applies where demand is made after the witness has testified on direct examination and is for the purpose of cross-examination, and possibly impeachment purposes, whether the statement has been used by the witness before trial to refresh his memory or not." Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W. 2d 467. If an accused brings himself within this rule, then it is error for the trial judge to fail to require production of a prior and available statement of the witness, though the error may be harmless. The harmfulness of the error is dependent upon whether an examination of the statement by this Court demonstrates that the defendant should have been allowed the statement for the purpose of cross-examination and possible impeachment. Error, of course, will result if the defendant is denied the opportunity to have made available such statement for the appellate record for the purpose of showing injury, if any.

Utilization of a combination of the limitations of the two rules[3] may well prevent either rule from being brought in play and

---

1. In oral argument before this Court counsel attempted to explain the arrangement of the courtroom and particularly the witness stand which made it difficult for the trial judge or the attorneys to observe whether the witness Thompson was actually using the instrument in question.

2. Such limitation has been criticized. 16 Baylor Law Review 51, 58. See also Wigmore on Evidence, 3rd Ed., Vol. 3, Sec. 762, p. 111.

3. Limitations referred to are the Gaskin rules (must be a statement made by the witness testifying and the "use before the jury" rules must be actually used or exhibited.)

will result in the accused always being deprived of seeing the statement or instrument in question. This may be easily accomplished by having the witness, whether he indicates the need to refresh his memory or not, study someone else's report, statement or summary, and then make sure that the instrument is not used or exhibited in the courtroom in the presence of the jury so that its contents become an issue.[4]

In discussing these limitations the following opinion was expressed in 16 Baylor Law Review 51, 60:

"The necessity for the right to inspect is not changed by virtue of the fact that another person's work is used to refresh one's memory. In fact, it would seem that there would be added reason to allow an inspection as a matter of right. Not only are the same safeguards needed (ie. a right to see that the evidence is not merely fabricated, the right to see if there is anything in the report which would detract from the witness' memory) but an additional safeguard is needed. This additional safeguard is the right to test the witness on cross to see if the facts about which he is testifying were his own observations and independent recollections or were merely gleaned or memorized by him from this hearsay report. At the very least, the defendant should be entitled to have such a report made a part of his bill of exceptions to allow the appellate court to decide if the defendant was injured by not being permitted by the trial court to inspect the report."

The instrument which the court refused to permit appellant to inspect and to use

for cross-examination was not laid out in the appellate record so the appellant could point out any inconsistencies to this Court. The court apparently deemed it necessary to have the instrument sealed in a separate envelope and brought forward in the record on appeal for the inspection of this Court. Such action was permissible and well within the court's discretion. The instrument appears to be a summary of the facts of the case prepared by the District Attorney following his interview with various witnesses. The statement is not that of the witness Thompson, though much of the summary is attributed to the interview or interviews with the witness Thompson, and I cannot conclude from a study of the record that any harm or injury resulted from the court's action which would justify reversal. I do observe, however, that the trial court's inspection of the instrument in question in camera and his statement that no inconsistency appears, and this Court's subsequent examination of the instrument forwarded under seal is often a poor substitute for actual use by appellant of such instrument on cross-examination.

In this discussion it should be borne in mind that the statement, report or other memorandum used to refresh a witness' recollection need not be one written or prepared by himself, since it is not the memorandum but the recollection of the witness which is evidence. See McCormick and Ray, Texas Law of Evidence, 2d Ed., Sec. 550, p. 446. Memoranda by other persons are constantly used for this purpose, but if the witness has no personal knowledge of the transaction, he has no recollection to be refreshed and no memorandum can be used. The danger, as I see it, is when the memorandum prepared by another and

---

4. The opportunity for such a situation is frequently presented. Peace officers often work as partners. They arrive at the scene of a crime together and make a joint arrest. Only one officer makes the offense report. The other officer alone is often called to testify for various reasons. If he testifies without referring to any offense report, no problem exists. All too often, however, he carefully examines his partner's report outside the courtroom and refreshes his memory. This may be a matter of practical necessity as officers are involved in many offenses between the time of the arrest in question and the trial. Nevertheless, the limitations of the two rules discussed often prevent the accused from inspecting the offense report when such officer has testified.

used by the witness contains many facts about the transaction of which the witness has no personal knowledge. In such situations the memorandum may be easily misused so as to put into the mouth of the witness a fictitious story which does not represent his recollection at all, or color his recollection in such a manner as to distort the true picture.

While it is true that there is no showing of how Thompson gained possession of a copy of the District Attorney's summary of the case, neither was it shown that this State's witness obtained possession thereof without consent of the prosecutor. The record does not reflect that other State's witnesses were afforded the same treatment as Thompson, and it may well be he obtained a copy by inadvertence. Nevertheless, this case should not be interpreted as approving such practice. In fact, I deplore, and I think this Court should condemn the practice of any prosecutor who willingly permits his witnesses to make a wholesale review of his personally prepared narrative account of the case indicating what dates, places, times and other facts various witnesses have stated to him, despite the fact that the summary is unsigned or sworn to by any witness or the fact that it is truly the work product of the State or any or its agencies.

To permit such practice is to reduce the trial to a staged play for which the dress rehearsal has already been had. Further, the Rule of Evidence as to witnesses is circumvented. It would serve no purpose if the practice is permitted, for the defendant to invoke the Rule as to the State's witnesses, for the horse is already stolen by the time the barn is locked.

Both the District Attorney and appellant's counsel are to be commended for the forthright, candid and enlightening oral arguments before this Court on this very question. This writer found such arguments most useful. Let it be hoped that their efforts will result in some guidelines beneficial to the bench and bar of this state in this rather difficult and growing area of our law.

Finding no reversible error, I concur.